**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID SHOW** and **MARIA FEDERICI,** | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 3081 |
| v. | ) ) | Magistrate Judge Morton Denlow |
| **Ford Motor Company,** | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs David Show and Maria Federici ("Show" and "Federici," or "Plaintiffs") bring this product liability action against Defendant Ford Motor Company ("Defendant"), alleging strict liability and negligence. Plaintiffs contend that a 1993 Ford Explorer manufactured by Defendant was defective and unreasonably dangerous, causing it to roll over after a low-speed collision with another vehicle. Plaintiffs seek damages for personal injury, pain and suffering, disability and disfigurement, medical bills, and lost wages. Defendant has raised a counterclaim against Show for contributory negligence. Defendant now seeks summary judgment on the grounds that Plaintiffs have not disclosed an expert witness to opine on the vehicle's defective condition. On January 26, 2010, the Court conducted an oral argument on the motion. For the reasons stated below, the Court grants Defendant's motion for summary judgment.

## I. BACKGROUND FACTS

As required when considering a motion for summary judgment, the following facts are either uncontested or presented in the light most favorable to Plaintiffs when contested.[1] *Anderson*, 477 U.S. at 255.

### A. Motor Vehicle Accident on September 24, 2002

At approximately 9:00 a.m. on September 24, 2002, Plaintiffs were traveling in a 1993 Ford Explorer ("Explorer") operated by Show, with Federici in the passenger seat. PRS[2] ¶¶ 10, 11. Show asserts he was driving the vehicle at a speed between 25 to 30 miles per hour.[3] *Id.* at ¶ 12. As Show drove through the intersection of Elizabeth and Washington Streets in Chicago, Illinois, the Explorer was struck in the left rear side by a 1998 Dodge Neon ("Neon") traveling under five miles per hour.[4] *Id.* at ¶¶ 10, 11.

The collision sent the Explorer spinning out of Show's control and it then rolled over at least three times before coming to rest on the driver's side of the car. DS ¶ 11; PRS ¶ 27. Defendant contends that the Explorer hit at least one parked vehicle during the spinout, but

---

[1] Defendant has conceded to Plaintiffs' version of the facts for the purposes of this motion on the premise that the issue before the court is a legal one that is not affected by any disputed facts.

[2] Citations to to "PRS ¶ _" refer to Plaintiff's Response to Ford Motor Company's Statement of Material Facts; "DS ¶ _" refers to Defendant Ford Motor Company's Statement of Material Facts; "PRM" refers to Plaintiff's Response to Defendant's Motion to Summary Judgment; "Pl.'s Compl." refers to Plaintiff's Complaint.

[3] Defendant disputes this fact and offers eyewitness testimony that the Explorer was traveling at 45 miles per hour. DS ¶ 12.

[4] The parties dispute where the Neon struck the Explorer, with Plaintiffs maintaining it hit behind the left rear door of the Explorer over the back left tire and Defendant that it hit the rear passenger door in a 90-degree "T-bone collision." DS ¶ 11; PRS ¶ 11.

2

Plaintiffs deny the Explorer made contact with any parked vehicle. PRS ¶ 12; DS ¶ 12. Show testified in his deposition that during the crash he lunged forward in the vehicle and "I thought I was going to be decapitated. I thought I was going to die." PRS ¶ 29. Show then blacked out and came to with "the truck . . . on my chest." *Id.*

**B.     Plaintiffs' Claims**

Plaintiffs originally filed a complaint in June 2004 in the Circuit Court of Cook County, but voluntarily dismissed the case in April 2007. Plaintiffs later re-filed in the Circuit Court of Cook County on April 15, 2008, and Defendant removed the case to federal court on May 28, 2008. The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

Plaintiffs' complaint raises both strict liability and negligence claims. In counts I & III, Plaintiffs allege that the Explorer was defective and unreasonably dangerous for its intended use when it left Defendant's possession, specifically that it was designed and manufactured such that it was inherently unstable and inclined to roll over in the course of foreseeable circumstances. Count I further alleges that Defendant failed to provide adequate warnings to consumers of the dangers or inherent hazards. In counts II & IV, Plaintiffs allege that Defendant was negligent in the design and manufacture of the Explorer, in failing to perform adequate testing, and in failing to warn the public of the unreasonably dangerous condition.

## C. Discovery Proceedings and Disclosure of Expert Witnesses

Following removal to the district court, the parties agreed upon a schedule for discovery. The deadline for disclosure of Plaintiffs' Rule 26(a)(2) expert witnesses was originally January 5, 2009. Due to delays in fact discovery, the Court extended the cutoff date, requiring Plaintiffs to disclose expert witnesses by April 15, 2009. On April 7, 2009, Plaintiffs were granted additional time to May 12, 2009. After failing to meet this deadline, this Court again granted an extension to August 21, 2009. Plaintiffs were subsequently given one final extension to October 7, 2009.

On October 7, 2009, Plaintiffs disclosed two expert witnesses. One was Dr. Ernest P. Chiodo ("Dr. Chiodo"), a biomedical and industrial engineer, who will testify that Show's injuries were caused by the forces of the rollover accident. The other is Richard Galuska ("Mr. Galuska"), C.P.A., who will address Show's loss of income as a result of the accident. *Id.* Plaintiffs did not disclose an expert to opine on the vehicle's defective condition, design and manufacture.

## II. LEGAL STANDARD

A court may grant summary judgment when the "pleadings, the discovery, and discovery materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that there exists

4

no genuine issue of material fact. *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252.

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). The evidence is viewed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Anderson*, 477 U.S. at 255. Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences is a jury function. *Id.; Spiegla v. Hall*, 371 F.3d 928, 935 (7th Cir. 2004).

### III. DISCUSSION

The issue presented boils down to whether, as a matter of law, Plaintiffs must present expert testimony at trial to prove that the Explorer contained an unreasonably dangerous defect in its design or manufacture that caused it to roll over. Defendant contends that, without an expert, Plaintiffs cannot make out a *prima facie* case for strict liability or negligent design/manufacture. Since Plaintiffs have offered no expert on this point, Defendant asserts it is entitled to summary judgment. Plaintiffs, on the other hand, contend they do not need expert testimony if they proceed under the "consumer expectation" test to prove their case. Because this case comes to the Court under diversity jurisdiction, the substantive law of Illinois, the forum state, applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Lummis v. State Farm Fire & Cas. Co.*, 469 F.3d 1098, 1100 (7th Cir. 2006).

## A. Strict Products Liability and Methods of Proof

Illinois follows the strict liability doctrine set forth in §402A of the Second Restatement of Torts, which imposes liability on "a seller of any product in a defective condition unreasonably dangerous to the user or consumer or to his property," regardless of the degree of care taken in the production. *Suvada v. White Motor Co.,* 210 N.E.2d 182, 185 (Ill. 1965) (overturned on other grounds); Restatement (2d) Torts § 402A (1965). To show that a product is unreasonably dangerous, a plaintiff may assert any of the following: existence of a design defect, existence of a manufacturing defect, and/or failure of the manufacturer to adequately warn consumers of a product's dangerous propensities. *Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990). In the present case, Plaintiffs have alleged all three. The unreasonably dangerous condition must also be the proximate cause of the plaintiff's injuries. *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 339 (Ill. 2008).

The Illinois Supreme Court has laid out the specific elements of a strict liability claim based on a product defect as follows: 1) a condition of the product as a result of manufacturing or design, 2) that made the product unreasonably dangerous, 3) and that existed at the time the product left the defendant's control, and 4) an injury to the plaintiff, 5) that was proximately caused by the condition. *Mikolajczyk*, 901 N.E.2d at 345. The plaintiff has the burden of proof on each element. *Id.*

To establish that a product is unreasonably dangerous, and thus defective, a plaintiff may proceed under two alternative methods of proof, known as the "consumer-expectation test" and the "risk-utility test." *Id.* at 348, 352. Under the consumer-expectation test, the

6

plaintiff must prove that the product is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 254 (Ill. 2007) (quoting Restatement (Second) of Torts § 402A, cmt. i (1965)). Under the consumer-expectation test, the single question for the jury is whether the product is unsafe when put to use in an intended or reasonably foreseeable manner. *Mikolajczyk*, 901 N.E.2d at 352; Illinois Pattern Jury Instructions, Civil, No. 400.06 (2009). The plaintiff need not actually offer "evidence" of ordinary consumer expectations; rather, the jury may rely on their own experiences to determine what an ordinary consumer would expect. *Id.*

Under the risk-utility test, applicable in design defect cases, the plaintiff must offer proof that the risk of danger inherent in the product design outweighs its benefits. *Calles*, 864 N.E.2d at 255; Illinois Pattern Jury Instructions, Civil, No. 400.06A (2009). Factors that may be considered under the risk-utility test include the availability and feasibility of alternative designs at the time of its manufacture, or that the design used did not conform to industry standards, guidelines provided by an authoritative voluntary association, or criteria set by legislation or government regulations. *Calles,* 864 N.E.2d at 260. Even if a product satisfies ordinary consumer expectations, it could still be unreasonably dangerous if the jury finds the risks inherent in the design outweigh the benefits. *Id.* at 256.

In a recent 2008 case, the Illinois Supreme Court addressed the applicability of these two tests in strict products liability cases. *Mikolajczyk*, 901 N.E.2d at 344-54. In *Mikolajczyk*, the plaintiff brought a defective design claim against Ford claiming a vehicle

seat design was unreasonably dangerous. Both parties offered expert testimony about the risks and benefits of the seat design, but the trial court only instructed the jury on the consumer-expectation test. After the jury found in favor of the plaintiff, the defendants appealed, arguing, among other things, that the consumer-expectation test is inappropriate in cases involving "complex" products such as a car. The defendants asserted that the consumer-expectation test was designed for cases where jurors, as ordinary consumers, can rely on their own experience and expectations to determine whether a product is unreasonably dangerous. In a case involving a complex product, the defendants argued, jurors could not have had reasonable expectations about the design and function of a car seat, and thus, only the risk-utility test was appropriate.

The court rejected this argument and explicitly held that the consumer-expectation test remains a viable method for a plaintiff to prove an unreasonably dangerous defect, even in cases involving complex products. *Id.* While the existence of an alternative design and the balancing of risks and benefits are relevant in a products liability case, "they are not elements of the claim that the plaintiff is required to plead and prove in every case." *Id.* at 347. The court did go on to hold, though, that even in cases where the plaintiff proceeds with proof on the consumer-expectation test, if the defendant offers evidence that implicates the risk-utility test, the jury must be given instructions that integrate the two tests. *Id.* at 352-53.

In the present case, Plaintiffs are proceeding under the consumer-expectation test to prove that the Explorer contained an unreasonably dangerous defect that caused Plaintiffs' injuries. If Defendant were to offer evidence at trial implicating the risk-utility test, then a

combined jury instruction would be given. It has been suggested that the combined instruction may in fact make the separate consumer-expectation test "illusory." *Mikolajczyk*, 901 N.E.2d at 366 (Fitzgerald, C.J., dissenting). However, at this stage of the litigation, and for the purposes of this motion, the Court will focus on whether Plaintiffs can make a *prima facie* case of strict liability under the consumer-expectation test.

**B.     Need for Expert Testimony**

Plaintiffs have not disclosed an expert who can testify about the alleged defective condition in the Explorer, that such a condition existed when it left Ford's control, or that it could have caused the Explorer to roll over. *See* PRS ¶ 24.[5] Rather, Plaintiffs contend that they do not need an expert if they proceed under the consumer-expectation test. Plaintiffs seek to prove that the Explorer failed to perform as safely as an ordinary consumer would expect by allowing the jury to rely solely on their own experience and expectations as vehicle consumers. Put another way, if the ordinary consumer would not expect his Explorer to roll over when he was driving 30 miles an hour and hit by a car driving under five miles an hour, Plaintiffs contend they have proven an unreasonably dangerous defect.

Plaintiffs asserted in oral argument that they were primarily relying on the *Mikolajczyk* decision to support their position. However, the *Mikolajczyk* court did not confront or decide the issue of whether and when expert testimony is required under the consumer-expectation test. Furthermore, the plaintiff in *Mikolajczyk* had experts testify at

---

[5]Plaintiffs have disclosed experts who will testify that Show's injuries were caused by the forces of the rollover and that he lost income as a result of his injuries; however, this testimony would not be relevant to the other strict liability elements.

trial, so it is impossible to infer from it that experts are never required in a consumer-expectation case. *Mikolajczyk*, 901 N.E.2d at 333. In fact, in another product liability case, the Illinois Supreme Court upheld a jury verdict for a plaintiff under the consumer-expectation test expressly because "expert testimony adduced at trial was sufficient to establish that the design of the device was defective and that the defective design caused her injury." *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 45 (Ill. 2002). Thus, the Court rejects Plaintiffs' argument that they need not present expert testimony simply because they are proceeding under the consumer-expectation test, and must turn to the other relevant case law to clarify when an expert is needed.

Under Illinois law, expert testimony is required in at least some products liability cases to prove that a product defect was unreasonably dangerous and proximately caused the plaintiff's injuries. *See Baltus v. Weaver Division of Kidde & Co.*, 557 N.E.2d 580 (Ill. App. Ct. 1990). This holds true for cases arising under strict liability as well as negligence. *See id.* (negligence); *Henry v. Panasonic Factory Automation Co.*, 917 N.E.2d 1086, 1091 (Ill. App. Ct. 2009) (strict liability). In *Baltus,* the Illinois Appellate Court laid out the rationale for when expert testimony will be required. 557 N.E.2d 580 (Ill. App. Ct. 1990).

*Baltus* involved a negligent manufacture and design claim that the transmission jack of a vehicle was defective and injured the mechanic repairing it, but the plaintiff had offered no expert testimony to substantiate these claims. *Id.* at 582. The court held that, when specialized knowledge or expertise of a product defect is "outside the layman's knowledge," an expert is needed to assist the jury's understanding of whether a product is unreasonably

10

dangerous. *Id.* at 588-89. A jury cannot be allowed in the absence of expert testimony to "speculate that [the product] was in fact an unreasonably dangerous" one. *Id.* Since the features and operation of the transmission jack in *Baltus* were beyond a lay jury's understanding, the court held an expert was needed, and upheld summary judgment for the defendant. *Id.* at 591.

Plaintiffs correctly point out that *Baltus* did not set forth an expert requirement for every product liability suit. *Id.* at 590. Rather, "[t]he specific facts and issues involved determine whether expert opinion testimony is necessary or desirable." *Id.* at 588. The *Baltus* court distinguished "simple" and "obvious" cases from those involving more complex products, holding that when the average juror would be able to understand how the product functions with "common knowledge," expert testimony is not required to aid in the understanding of the defect. *Id.* at 589. For example, in a case where the plaintiff alleged that a simple walking crutch collapsed while she was using it, the court held that absent secondary causes a jury could conclude this was due to a defect. *Varady v. Guardian Co.*, 506 N.E.2d 708, 711-12 (Ill. App. Ct. 1987). Similarly, no expert was needed in a case involving a spray gun without safety guards because it was "within the realm of knowledge and experience of laymen" to determine whether the lack of safety guards made the product unreasonably dangerous. *Eberle v. Brenner*, 475 N.E.2d 639, 643-44 (Ill. App. Ct. 1985).

However, products liability cases that involve complex products beyond a lay jury's understanding require expert testimony. *Henry*, 917 N.E.2d at 1091. In *Henry,* a case involving machinery used in automotive manufacturing, the court upheld summary judgment

11

for the defendant because the plaintiff did not offer a qualified expert to opine that a lack of safety devices on the machine was an unreasonably dangerous defect. *Id.* at 1093. The court found that the machine "is a specialized piece of equipment, and the design and manufacture of the [machine] involves specialized knowledge." *Id.* at 1092. Thus, an expert was needed to aid the jury's understanding of the defect. *Id; see also Volpe v. Iko Industries, Ltd.*, 763 N.E.2d 870, 878-79 (Ill. App. Ct. 2002) (summary judgment upheld due to insufficient evidence because plaintiff did not have expert testimony that adequacy of deflector device in oxidizer tank constituted a design defect).

Several courts in this district have applied *Baltus* and granted summary judgment in strict product liability and negligence cases where the plaintiff failed to present expert testimony to establish an unreasonably dangerous defect. In one analogous case involving an alleged vehicle defect when an airbag failed to deploy after a collision, the court granted summary judgment because the plaintiff did not offer expert testimony to establish the design of vehicle's airbag was unreasonably dangerous or the proximate cause of the plaintiff's injury. *Klootwyk v. Daimler Chrysler Corp.*, 2003 WL 21038417, at *3-4 (N.D. Ill. May 7, 2003). The court held that such technical matters were beyond the common knowledge and experience of jurors, and that without a qualified expert they would be simply speculating that the airbag was defective when it left the manufacturer's control. *Id.; see also Fulton v. Theradyne Corp.*, 2007 WL 772953, at *4-5 (N.D. Ill. Mar. 12, 2007) (distinguishing *Varady* and granting summary judgment because there was no expert with "specialized knowledge" of the complicated design and manufacture of the plaintiff's walker and it "would be pure

12

speculation if the jury was allowed to assess the design and manufacture of the Walker in the absence of expert testimony" ); *Muller v. Synthes Corp.*, 2002 WL 460827, at *7-9 (N.D. Ill. Mar. 26, 2002) (summary judgment for defendant in case involving surgical implant device because no expert testimony to establish what the defect was or that it proximately caused plaintiff's injury).

However, not every case involving a vehicle defect will necessitate expert testimony. *See Tweedy*, 357 N.E.2d at 451. In *Tweedy*, the plaintiff alleged a brake defect after his daughter attempted to press the brake pedal but it went completely to the floor. Proceeding under what is now called the consumer-expectation test, the plaintiff offered no expert testimony concerning the presence of a specific defect in the brake system. The court held, under the circumstances in that case, that evidence of a malfunction alone, absent abnormal use or secondary causes, was enough for a *prima facie* case that a product was defective when it left a manufacturer's control. *Id.* at 452. Because the car had been regularly inspected and not subject to abnormal use, the court found that a jury could draw the reasonable inference that a car's brakes would not completely fail absent a defective condition. *Id.*

The Seventh Circuit likened the reasoning in *Tweedy* to a *res ipsa loquitur* theory, in that a *prima facie* case is established by circumstantial evidence of the product's failure alone so long as there is no evidence of secondary causes. *Navarro v. Fuji Heavy Industries, Ltd.*, 117 F.3d 1027, 1030 (7th Cir. 1997). While Illinois does not *per se* accept *res ipsa* in strict liability cases, it has held that circumstantial evidence is sometimes sufficient to establish a

13

*prima facie* case. *Samansky v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 567 N.E.2d 386, 394 (Ill. App. Ct. 1991) (referring to the "*Tweedy* doctrine"). One case coming out of this district applied the theory to a strict liability case alleging a defective steering system where a vehicle had suddenly started swerving of its own accord while the plaintiff was driving. *Roman v. General Motors Corp.*, 727 F. Supp. 1153, 155-56 (N.D. Ill. 1989). The court held that the plaintiff established a *prima facie* case even without expert testimony, because he was operating the vehicle normally and there were no intervening causes. Thus, the jury could reasonably infer the steering system was defective.

The *Tweedy* doctrine will allow a plaintiff to rely on circumstantial evidence only when the jury can reasonably infer that the plaintiff's injury resulted from a condition of the product, the condition was unreasonably dangerous, and the condition existed when it left the defendant's control. *Varady*, 506 N.E.2d at 711; Illinois Pattern Jury Instructions, Civil, No. 400.01.01 (2009). The circumstantial evidence must justify an inference of probability, as distinguished from mere possibility, because liability cannot be predicated on mere speculation, guess, or conjecture. *Varady*, 506 N.E.2d at 711. The fact that an injury occurred does not always in and of itself prove that a product is defective. *Sorce v. Naperville Jeep Eagle, Inc.*, 722 N.E.2d 227, 238 (Ill. App. Ct. 1999) (summary judgment affirmed where no evidence as to why a car seat started vibrating because a "legal inference of defectiveness may not be drawn merely from evidence that an injury occurred").

The Seventh Circuit attempted to reconcile when an expert is needed in a vehicle defect case analogous to the one presently before the Court. *Smoot v. Mazda Motors of Am.,*

14

*Inc.*, 469 F.3d 675, 678 (7th Cir. 2006) (applying Wisconsin law, but recognizing same legal principles at issue as in Illinois). In *Smoot*, the plaintiff alleged her car's airbag system was defective after being triggered when she hit a chunk of pavement driving at 35 to 40 m.p.h. The plaintiff wanted to proceed under a *res ipsa* theory, which the court noted would be appropriate if the accident was such that it would not occur without a defect. *Id.* at 680. For example, a jury could reasonably infer a defect if the airbags deployed when the plaintiff parked the car, or while blowing on the horn. However, the court went on to hold that expert testimony is required in cases where the inference of a defect from the accident itself would only be obvious to an expert. In that particular case, the court could not say "as a matter of common sense or common experience" that hitting a chunk of asphalt would not cause a slowing of the car sufficient to trigger the airbag; thus, expert testimony was needed. *Id.* at 681.

Plaintiffs point to three cases to attempt to illustrate that expert testimony was not needed in products liability actions, when the average juror could determine whether the product failed to perform as safely as an ordinary consumer would expect. *See Mele v. Howmedica, Inc.*, 808 N.E.2d 1026 (Ill. App. Ct. 2004); *Collins v. Interroyal Corp.*, 466 N.E.2d 1191 (Ill. App. Ct. 1984); *Buehler v. Whalen*, 355 N.E.2d 99 (Ill. App. Ct. 1976). However, Plaintiffs' reliance on these cases is misplaced. In *Mele* and *Buehler*, expert witnesses did in fact present testimony to support the claim that a product defect was unreasonably dangerous. *Mele*, 808 N.E.2d at 1037 (doctor testified to danger posed by surgical implant); *Buehler*, 355 N.E.2d at 108 (expert testified that design of car's fuel tank

15

made it vulnerable to explosions and was unreasonably dangerous; court considered this as part of evidence sufficient to support jury verdict). Nothing in those opinions indicated that experts were not required to establish the existence of a defect. *Collins* is also distinguishable, as it involved a simple collapsible stool that a lay jury could understand without the aid of experts. *See Baltus*, 557 N.E.2d at 589-90 (citing *Collins*). Thus, these cases lend no support to Plaintiffs' argument.

In light of the relevant precedent, the Court concludes that when a plaintiff proceeds under the consumer-expectation test, he must present expert testimony to establish a *prima facie* case of strict products liability when the claim involves technical knowledge beyond the common knowledge and experience of jurors. Furthermore, a plaintiff cannot establish a defect through circumstantial evidence of the accident alone if an intervening force could have caused the accident.

In the present case, Plaintiffs cannot establish the elements of their strict liability claims for two reasons: 1) they need expert testimony to assist a jury in determining that a defect in the Explorer existed at the time it left Defendant's control, and 2) they need expert testimony to establish that it was a defective condition in the Explorer, and not the intervening collision, that caused it to roll over.

Plaintiffs have alleged that the Explorer had an "inherently unstable design and defective design which would result in an unreasonably high propensity to roll over . . ." and that it was "manufactured in such a fashion as to be inherently unstable and inclined to roll over . . . ." Pl.'s Compl. at 2. Plaintiffs want to prove this with only the evidence that the

16

Explorer spun out and rolled over after a relatively low-speed collision with another vehicle. Essentially, the jury will have to speculate from the accident alone that the Explorer contained an unreasonably dangerous defect. Plaintiffs must offer more to aid the jury's understanding.

The subject of stability systems in vehicle design and manufacture is clearly a complex, technical matter and goes well beyond the knowledge of an average juror. Unlike a case involving a simple product or even a straightforward brake failure, the jury cannot be expected to understand the dynamics of vehicle stability based on their common experience. Rather, such evidence constitutes "scientific, technical, or other specialized knowledge." *See* Fed. R. Ev. 702. A lay jury could not look at the evidence Plaintiff presents and determine whether a defective condition in the Explorer caused it to roll over under these circumstances. Nor could it have any basis to conclude that such a condition existed when it left Defendant's control. Even if a defect could be inferred from the accident itself, it could only be inferred by an expert having knowledge of vehicle design who could identify the defect and eliminate secondary causes. A lay jury will thus require the aid of a qualified expert to understand what defect in the Explorer could have caused it to roll over in the circumstances alleged here.

This case is unlike *Tweedy*, in which the plaintiff introduced the total failure of the brakes as evidence of a brake defect, in the absence of any other causes. Had Show been driving normally and the Explorer rolled over after he merely turned the steering wheel or stepped on the brakes, this case might be appropriate under a *Tweedy* analysis. In those

scenarios, the defect would have been obvious to even a lay juror so long as there was no evidence of other secondary causes. However, that is simply not the case here, because here the rollover occurred following a collision with at least one other vehicle. As in *Smoot*, the Court cannot say here "as a matter of common sense or common experience" that a rollover could not occur after a collision in the absence of a defect.

Therefore, to make out a *prima facie* case of strict liability under the consumer-expectation test involving a complex product and an intervening event, Plaintiffs need a qualified expert to testify to a defective condition in the Explorer at the time it left Defendant's control, that caused it to roll over under these circumstances. Despite numerous discovery extensions, Plaintiffs have only offered experts who will testify that Show's injuries were caused by the forces of the rollover and that he sustained a loss of income as a result. Discovery has now closed, and Plaintiffs will not be given additional extensions. Therefore, Plaintiffs have failed to produce sufficient evidence to establish a *prima facie* case for their strict liability claims, and summary judgment is warranted on these claims.

## C.  Negligent Design and Manufacture

Although strict liability is generally the preferred theory in products liability cases, negligence actions are also available for plaintiffs injured by defective products. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263-64 (Ill. 2007). Unlike strict liability actions, which focus on the product itself, negligence also involves the fault of the manufacturer and whether it exercised ordinary care in the design or manufacture of the product. *Calles,* 864 N.E.2d at 263-64; *Baltus v. Weaver Div. of Kidde & Co., Inc.*, 557 N.E.2d 580, 586 (Ill. App.

Ct. 1990). To prevail on a negligence claim, a products liability plaintiff must show that the manufacturer deviated from the standard of care other similar manufacturers followed at the time or show that the manufacturer knew or should have known of the risk posed by the product design and failed to warn the plaintiff of its dangerous propensities. *Calles*,864 N.E.2d at 264; *Baltus*, 557 N.E.2d at 586. The remaining negligence elements of causation and damages must also be shown. *Calles*, 864 N.E.2d at 263.

However, the lack of expert testimony that proves fatal to Plaintiffs' strict liability claims similarly necessitates summary judgment on the negligence claims. The threshold question under a negligence theory, as with strict liability, is always whether the product was unreasonably dangerous due to the existence of a defective condition. *Id.*; *Baltus,* 557 N.E.2d at 585. Specifically, it must first be established "whether the product is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function." *Baltus,* 557 N.E.2d at 585. Therefore, to succeed on their negligence claims, Plaintiffs will need to prove that an unreasonably dangerous defect caused their injuries. *Id.*

As discussed above, Plaintiffs need an expert to testify to assist the jury in making this determination. Without such testimony, they cannot establish that Defendant deviated from any standard of care. Therefore, Plaintiffs cannot make a *prima facie* case on their negligence claims, and summary judgment is warranted on those counts.

## IV. CONCLUSION

**This Court holds that Plaintiffs must present expert testimony to establish a *prima facie* case of strict products liability or negligence because their claim involves technical**

**knowledge beyond the common knowledge and experience of jurors. For the reasons set forth in this opinion, the Court grants Defendant's motion for summary judgment.**

**SO ORDERED THIS 17th DAY OF MARCH, 2010**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

| | |
|---|---|
| John C. Ambrose | John A. Krivicich |
| Ambrose & Associates, P.C. | Michael J. Borree |
| 221 N. LaSalle, Suite 1748 | Donohue Brown Mathewson & Smyth LLC |
| Chicago, IL 60601 | 140 S. Dearborn, Suite 800 |
| | Chicago, IL 60603 |
| Counsel for Plaintiffs | Counsel for Defendant |